UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

FILED
IN CLERKS OFFICE

2003 DEC 12  A 11: 36

U.S. DISTRICT COURT
DISTRICT OF MASS.

|  |  |
|---|---|
| JOHN HANCOCK LIFE INSURANCE COMPANY, JOHN HANCOCK VARIABLE LIFE INSURANCE COMPANY, and INVESTORS PARTNER LIFE INSURANCE COMPANY, | ) ) ) ) ) ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) |
| ABBOTT LABORATORIES, | ) ) ) |
| Defendant. | ) ) |

MAGISTRATE JUDGE ____

03 CV 12501 DPW

CIVIL ACTION NO. _____

RECEIPT # _____
AMOUNT $ 150
SUMMONS ISSUED ✓
LOCAL RULE 4.1 _____
WAIVER FORM _____
MCF ISSUED _____
BY DPTY. CLK. _____
DATE 12-12-03

**COMPLAINT
FOR DECLARATORY JUDGMENT**

**Introduction**

1. This is an action filed pursuant to 28 U.S.C. § 2201, *et seq.*, in which plaintiffs John Hancock Life Insurance Company, John Hancock Variable Life Insurance Company and Investors Partner Life Insurance seek a judicial declaration that the plaintiffs' obligation to make additional Program Payments to defendant Abbott Laboratories under the Research Funding Agreement by and between the plaintiffs and the defendant, dated as of March 13, 2001 (the "Agreement") has terminated in accordance with the terms of that Agreement.

Declaratory relief is appropriate because an actual controversy currently exists between the parties with respect to the issue presented.

## Parties

2. Plaintiff John Hancock Life Insurance Company is a company, duly formed and existing under the laws of the Commonwealth of Massachusetts, that maintains its corporate headquarters in Boston, Suffolk County, Massachusetts. John Hancock Life Insurance Company is one of the nation's leading insurance companies, providing a broad array of insurance and investment products to retail and institutional customers, primarily in North America.

3. Plaintiff John Hancock Variable Life Insurance Company is a company, duly formed and existing under the laws of the Commonwealth of Massachusetts, that maintains its corporate headquarters in Boston, Suffolk County, Massachusetts. John Hancock Variable Life Insurance Company provides variable life insurance products that link life insurance coverage and an investment return to an underlying portfolio of investments chosen by the policyholder.

4. Plaintiff Investors Partner Life Insurance Company (collectively, with plaintiffs John Hancock Life Insurance Company and John Hancock Variable Life Insurance Company, "John Hancock") is a company, duly formed and existing under the laws of the State of Delaware, that maintains its corporate headquarters in Boston, Suffolk County, Massachusetts. Investors is a wholly-owned subsidiary of John Hancock Variable Life Insurance Company that sells various types of life insurance products.

5.  Defendant Abbott Laboratories ("Abbott" or "Abbott Labs") is a corporation, duly formed and existing under the laws of the State of Illinois, that maintains its corporate headquarters in Abbott Park, Illinois. Abbott is a broad-based health care company that discovers, develops, manufactures and markets products and services that span the continuum of care -- from prevention and diagnosis to treatment and cure. Abbott's principal businesses are global pharmaceuticals, nutritionals, and medical products, including diagnostics and cardiovascular devices. Abbott Labs achieved record sales and net earnings of $17.7 billion and $3.2 billion, respectively, in 2002.

### Jurisdiction and Venue

6.  This Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties, and the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

7.  Venue in this district is proper pursuant to 28 U.S.C. § 1391(a)(1) because defendant Abbott Labs resides in this district within the meaning of 28 U.S.C. § 1391(c), and further because Section 16.2 of the parties' Agreement provides that Abbott,

> consents ... to the exclusive jurisdiction of the courts of the Commonwealth of Massachusetts and the United States District Court for the District of Massachusetts ... for the purpose of any suit, action or other proceeding arising out of any of its obligations hereunder or thereunder or with respect to the transactions contemplated hereby or thereby, and expressly waives any and all objections that it may have as to venue in such courts.

8.  As set forth more fully below, an actual controversy currently exists for purposes of 28 U.S.C. § 2201 with respect to John Hancock's obligation to make additional payments to Abbott Labs under the terms of the Agreement.

## Facts

9.    On March 13, 2001, John Hancock and Abbott Labs entered a written Agreement whereby Hancock agreed to provide funding to Abbott Labs for research and development activities on a portfolio of potential pharmaceutical products or "Program Compounds" (the "Program") in exchange for the right to receive future milestone and royalty payments from Abbott. Specifically, Hancock agreed to pay Abbott Labs up to a specified amount in four annual installments (the "Program Payments") from 2001 through 2004 (individually, "Program Years" and collectively, the "Program Term"). Abbott Labs agreed to provide additional funding for the Program and committed, under the terms of the Agreement, to spend certain minimum amounts on the Program during each Program Year (the "Annual Minimum Spending Target"), and a specified aggregate total on the Program over the entire four year Program Term (the "Aggregate Spending Target").

10.    Section 2.2 of the Agreement obligates Abbott Labs to provide John Hancock, at least forty-five days prior to the start of each Program Year, with an Annual Research Plan ("ARP") which spells out Abbott's anticipated Program spending for that year and for the remaining Program Term. If Abbott Labs' ARP for any given year "does not reasonably demonstrate [Abbott's] ... intent and reasonable expectation to expend on Program Related Costs during the Program Term an amount in excess of the Aggregate Spending Target," then John Hancock's "obligation to make any remaining Program Payments for any succeeding Program Years" automatically terminates pursuant to Section 3.4(iv) of the Agreement.

11. John Hancock made two Program payments to Abbott Labs under the Agreement for 2001 and 2002. In late 2002, John Hancock received Abbott Labs' ARP for the coming year, which stated what Abbott Labs intended to spend on the Program in 2003, but did not disclose Abbott's estimated spending amount for 2004, the final year of the Program. No complete 2002 ARP was forthcoming from Abbott Labs until, at John Hancock's specific request, a copy eventually was sent to Hancock in late September 2003. That complete 2002 ARP and the accompanying cover letter from Thomas Lyons, the Controller of Abbott's "Global Pharmaceutical Research and Development" group, plainly state that it was Abbott's intention and reasonable expectation as of October 2002 to spend many millions of dollars less than the Aggregate Spending Target over the four year Program Term.

12. After receiving Abbott Labs' complete 2002 ARP in late September 2003, John Hancock notified Abbott Labs in a letter dated October 10, 2003, that Abbott's decision in 2002 to reduce its anticipated spending over the four year Program Term below the required Aggregate Spending Target automatically terminated John Hancock's obligation to make Program Payments to Abbott for the third and fourth Program Years pursuant to the express terms of Section 3.4 of the Agreement. A true copy of that letter is appended to this Complaint at Tab 1.

13. Abbott Labs has responded to John Hancock's notification referenced in Paragraph 12, *supra*, by contesting John Hancock's assertion and demanding payment of the multi-million dollar third Program Payment before year end.

14. The parties' subsequent efforts to amicably resolve their differences have proven unsuccessful.

## Claim

### COUNT I
(For a Declaratory Judgment Pursuant to 28 U.S.C. § 2201, *et seq.*)

15. John Hancock hereby repeats and incorporates by reference the allegations set forth in Paragraphs 1 through 14 of this Complaint, *supra*.

16. Abbott's decision in 2002 to reduce its anticipated spending over the entire Program Term below the required Aggregate Spending Target automatically terminated John Hancock's obligation to make Program Payments to Abbott for the third and fourth Program Years pursuant to Section 3.4 of the Agreement. Nonetheless, Abbott Labs continues to insist that John Hancock is obligated to make the third Program Payment before the close of 2003.

17. Accordingly, an actual controversy exists between John Hancock and Abbott Labs with respect to John Hancock's obligation to make additional Program Payments to Abbott under the Agreement.

## Prayer for Relief

WHEREFORE, John Hancock respectfully requests that this Court enter a final judgment in its favor and against Abbott Labs:

(a) declaring that John Hancock's obligation to make Program Payments to Abbott for the third and fourth Program Years has terminated in accordance with the terms of the Agreement;

(b) declaring that the Agreement otherwise is in full force and effect in accordance with its terms;

(c) awarding John Hancock its losses, including without limitation its costs, expenses and reasonable attorney's fees, incurred in this action as permitted by law and the terms of the Agreement; and

(d) granting such further necessary or proper relief as the Court deems just and appropriate in the circumstances pursuant to 28 U.S.C. § 2202.

> JOHN HANCOCK LIFE INSURANCE
> COMPANY, JOHN HANCOCK VARIABLE
> LIFE INSURANCE COMPANY, AND
> INVESTORS PARTNER LIFE INSURANCE
>
> By their attorneys,
>
> /s/ Brian A. Davis
> Brian A. Davis (BBO No. 546462)
> Michael Arthur Walsh (BBO No. 514875)
> Raymond A. O'Brien (BBO No. 629753)
> Gretchen L. Edson (BBO No. 644742)
> CHOATE, HALL & STEWART
> Exchange Place
> 53 State Street
> Boston, Massachusetts 02109
> Tele: 617-248-5000

Date:   December 12, 2003

3633570.1