# Exhibit A

1              UNITED STATES DISTRICT COURT

2                 DISTRICT OF MASSACHUSETTS

3     * * * * * * * * * * * * * * * *
                                    *
4     JOHN HANCOCK LIFE INSURANCE   *
         COMPANY, ET AL             *
5                      Plaintiffs   *
                                    *
6        VERSUS                     *    CA-03-12501-DPW
                                    *
7     ABBOTT LABORATORIES           *
                      Defendant     *
8     * * * * * * * * * * * * * * * *

9          BEFORE THE HONORABLE DOUGLAS P. WOODLOCK

10            UNITED STATES DISTRICT COURT JUDGE

11                        HEARING

12                    MARCH 30, 2004

13    APPEARANCES:

14         BRIAN A. DAVIS, ESQ. AND RAYMOND A. O'BRIEN, ESQ.
           Choate, Hall & Stewart, Exchange Place, 53 State
15         Street, 33rd Floor, Boston, Massachusetts  02109,
           on behalf of the Plaintiffs

16
           LAWRENCE R. DESIDERI, ESQ., Winston & Strawn, LLP,
17         35 W. Wacker Drive, Chicago, Illinois  60601-9703,
           on behalf of the Defendant

18
           PETER E. GELHAAR, ESQ., Donnelly, Conroy & Gelhaar,
19         LLP, One Beacon Street, 33rd Floor, Boston,
           Massachusetts  02108, on behalf of the Defendant

20
                              Courtroom No. 1 - 3rd Floor
21                            1 Courthouse Way
                              Boston, Massachusetts  02210
22                            2:30 P.M. - 3:00 P.M.

23         Pamela R. Owens - Official Court Reporter
              John Joseph Moakley District Courthouse
24            1 Courthouse Way - Suite 3200
                 Boston, Massachusetts  02210
25    Method of Reporting:  Computer-Aided Transcription

1                    CA-03-12501-DPW

2                    MARCH 30, 2004

3          THE CLERK:  Counsel, come forward and identify

4     yourself for the record.

5          MR. DAVIS:  Your Honor, I am Brian Davis from

6     Choate, Hall & Stewart here in Boston.  With me is Ray

7     O'Brien.  We represent the plaintiffs, John Hancock.

8          MR. GELHAAR:  Peter Gelhaar for Abbott, Your

9     Honor.

10          MR. DESIDERI:  Lawrence Desideri for Abbott,

11     Your Honor.

12          THE COURT:  I guess I need a little

13     explanation of why this isn't just a basic contract

14     dispute that I'm going to deal with on the language

15     itself.

16          MR. DAVIS:  Yes, Your Honor.  Again, Brian

17     Davis representing John Hancock.  Perhaps I can put some

18     of it in perspective by explaining what the agreement is

19     about --

20          THE COURT:  Right.

21          MR. DAVIS:  -- and what's happened between the

22     parties.  The basic agreement that was entered into by

23     John Hancock and Abbott back in March of 2001 is called

24     a Research Funding Agreement.  And pursuant to the terms

25     of the agreement, Hancock agreed to give Abbott up to

1   214 million dollars over the four-year program term of

2   the agreement.  And that provided that money was to be

3   vested in the research and development of nine compounds

4   that are specified in the agreement.  Essentially, it's

5   a portfolio of compounds that would be supported by

6   these payments.  The portfolio compounds are essentially

7   drugs under development for cancer or for pain killers,

8   all of that.  And the way the agreement worked is that

9   as those program compounds progressed over the course of

10  the agreement, those that were successful, Hancock would

11  receive royalties on the monies that Abbott received in

12  selling those drugs over a period of time.  And Hancock

13  would also receive certain milestone payments.

14          The way the agreement was set up as well is

15  that Abbott was required to spend on those program

16  compounds.  It wasn't just Hancock.  So, Hancock was

17  contributing to the cost of developing those, but is not

18  the only one.  And the way the parties set up the

19  agreement was that program spending, the spending on the

20  compunds was essentially equated with the parties'

21  anticipation of success of those compounds.  So that if

22  Abbott kept spending on the drugs, that was a good sign

23  for Hancock that the drug still had potential and that

24  Hancock should continue to invest in the drugs because

25  Hancock's payments are made over the life of the

1    agreement.  And if Abbott -- the agreement also provides

2    that if Abbott were to reduce its spending below certain

3    minimum thresholds, that Hancock wouldn't have to pay

4    any longer because that was considered to be a sign that

5    the drugs didn't hold as much promise as they originally

6    thought.  And the --

7           THE COURT:  So, what's the breach here?  The

8    breach is that Abbott went below the thresholds, right?

9           MR. DAVIS:  Effectively, Your Honor, is the

10    contract operating according to its normal terms?

11    Because Abbott said that they weren't going to spend up

12    to the required threshold.  And that once they announced

13    that, that Hancock's obligation to make further payments

14    terminated.  However, Abbott is aware of the fact that

15    that those aren't the only disputes that existed between

16    the parties.  And we're here today because there were a

17    series of disputes that arose, including some disputes

18    about whether the program compounds among the nine

19    compounds that were supposed to have a reasonable chance

20    of success at the time that the agreement was entered

21    into, whether all of those really had a reasonable

22    chance of success.  And those issues have been discussed

23    between the parties.  We weren't able to reach agreement

24    on those.  We filed a DJ action because Abbott announced

25    its intention to sue us under the contract.  The

1      contract provides exclusive jurisdiction here in

2      Massachusetts.

3              THE COURT:  Well, I guess if it's a question

4      of did they go below the threshold or not, that's garden

5      variety contract.  If it's reasonable opportunity for

6      success in pharmaceutical compounds, that's a different

7      issue.  And I just want to understand which of these are

8      involved.  I mean, my initial read of the complaint was

9      it's a contract about a lot of money, but simply a

10     contract.

11             MR. DAVIS:  The issue that's before the Court

12     right now, Your Honor, is really a matter of the

13     contract.  I guess the point I was making is that there

14     were other disputes.  We didn't paint them in a DJ

15     action because it depends on our ability to look at some

16     of the program development documents.  And we asked for

17     those from Abbott.  And by the time we filed this

18     action, we didn't have them.  So we don't know what --

19             THE COURT:  Well, are you planning on amending

20     the complaint?

21             MR. DAVIS:  We may, Your Honor.  We were

22     planning on -- we have certain audit rights under the

23     agreement.  We plan on looking at those documents and

24     examining whether the concerns that we have are

25     legitimate.  And if they're legitimate, then yes, we'll

1    be moving to amend.  Again, the reason why we filed when

2    we did was Abbott said they were going to sue us, but it

3    wasn't that they were going to sue us in Massachusetts

4    as the contract provided.  So, we filed a declaratory

5    judgment action because Abbott wouldn't commit to suing

6    us in Massachusetts which has exclusive jurisdiction

7    under these.  So that's why we filed the suit.  We may

8    very well have been -- there's some basic discovery that

9    I think we need to do in order to determine whether our

10   other concerns are justified.  It really has to do with

11   the development of these program compounds.  If they

12   prove to be unjustified with a basic contract dispute,

13   if they prove to be justified, they may be, but it's

14   more complex.  And that's the basis for the differences

15   between the parties regarding timing.

16           THE COURT:  Then, Mr. Gelhaar, what's the --

17           MR. GELHAAR:  It's actually Mr. Desideri, Your

18   Honor.

19           THE COURT:  Okay.  Mr. Desideri?

20           MR. DESIDERI:  Good afternoon, Your Honor.

21           THE COURT:  So, are we waiting around to

22   figure out whether or not Hancock has got some other

23   claims here?

24           MR. DESIDERI:  No, Your Honor.  From Abbott's

25   perspective, this is simply the case that is pled in the

1    pleadings as they exist.  Abbott believes that it has

2    and will meet all spending obligations that exist under

3    the contract and we believe that's the principal  issue

4    in the case.  We did learn fairly recently that Hancock

5    had some other questions based on a document or letter

6    that they had for a couple of years.  But from our

7    perspective, this is simply a contract dispute as framed

8    in the pleadings.  And I will say that Abbott did commit

9    in the contract to venue here in Boston and recognizes

10   there can be a hearing and was never going

11   to --

12          THE COURT:  It's a matter of indifference to

13   me.  The issue is really just scheduling.  I mean,

14   there's a kind of reluctant debutante quality to the

15   joining of issues here.  And I want to understand when

16   they are going to be joined so I can set up a schedule

17   for dealing with it.  What I don't want to do is get

18   an opportunity to unburden myself about the spending

19   obligations in the contract and then be provided with

20   additional kind of disputes that I have to resolve

21   unless there's some special reason to do it that way.

22   So, I really want to figure out what you want for a

23   realistic schedule.

24          MR. DESIDERI:  We think realistically, Your

25   Honor, because we perceive this as a relatively narrow

1    contract dispute and because even damages in this case

2    is not a very complex issue because we're arguing merely

3    over well-defined payments --

4            THE COURT:  What if they introduce this other

5    set --

6            MR. DESIDERI:  I'm sorry?

7            THE COURT:  What if they introduce this other

8    set of issues having to do with compounds?

9            MR. DESIDERI:  I'm not sure exactly how

10    broadly what they intend to do, but it would certainly

11    broaden their discovery in the case.  But since I don't

12    know what it is exactly that they're claiming --

13            THE COURT:  How long is it going to take you

14    to get this figured out?

15            MR. DAVIS:  Your Honor, the initial round of

16    discovery on the program compounds, the development of

17    compounds will tell us whether we have our disputes.

18    So, I would think that approximately three or four

19    months of discovery on those issues, assuming that we

20    get what we want there.

21            THE COURT:  Any problem with that?

22            MR. DESIDERI:  Yes, Your Honor.  Because,

23    obviously, we are the party who is seeking the money

24    that Hancock is holding that was due us under the

25    contract, we were hoping more like four months for the

```
 1    entire fact discovery.  We believe that if one were to
 2    seek all documents, both relating to this entire
 3    contract and science, there's a lot of documents.
 4    And it would be very time-consuming and burdensome.
 5    But there's an issue that's presently framed in the
 6    complaint and in the answer.  Hancock could have filed a
 7    better claim if it sought to bring -- with the way the
 8    pleadings are framed now, we don't believe discovery
 9    into every conceivable science or each compound is
10    warranted given the parameters of the parties' dispute.
11         THE COURT:  Well, I suppose it comes down to
12    this.  If you can't agree upon a method of resolution, I
13    take the complaint as it's drawn, as it stands now, and
14    resolve that.  And if another case has to be brought,
15    another case has to be brought.  It's not a vehicle for
16    providing generalized discovery into the parties'
17    relationship.  You filed a lawsuit.  The lawsuit
18    identifies what the issues are.  If you have some other
19    thoughts and think that you're entitled to some form of
20    informal discovery -- but you're not entitled to
21    discovery in this case with respect to those compounds
22    on the basis of the complaint as it's drawn right now.
23         So this, as far as I'm concerned, is limited
24    to the declaratory judgment action as presently framed.
25    And as presently framed, I don't know what else you need
```

1    in the way of discovery.  Can't it all be stipulated?

2            MR. DAVIS:  Your Honor, may I address that for

3    a moment?

4            THE COURT:  Yes.

5            MR. DAVIS:  First, I think that the way that

6    the complaint is currently framed, it does, in fact,

7    implicate development programs for compounds.  Because

8    what Abbott was intending to spend and when is really a

9    function of what they were doing with respect to the

10   various program compounds.

11           THE COURT:  The issue, as I see the complaint

12   -- maybe you'll direct me to different language or I'll

13   understand this language differently.  But Abbott is

14   supposed to make certain kinds of anticipated spending.

15   Presumably that's identified with some particularity in

16   the contract.  It says Section 3.4.  And there's nothing

17   here about some basis for Hancock to inquire into why it

18   is that Abbott isn't making the spending, is there?

19           MR. DAVIS:  Your Honor, I think I just heard

20   Mr. Desideri say that they, in fact, do intend to spend

21   according to what's required under the contract.

22           THE COURT:  Right.

23           MR. DAVIS:  We have a dispute about that.

24           THE COURT:  Right.  But isn't that -- I mean,

25   the parties seem to want to make it more complex or,

1    more accurately, use this declaratory judgment as a

2    springboard for a bunch of other disputes.  Abbott wants

3    to delay that.  Okay.  You want to use it in some

4    fashion to get into other disputes.  But I want to

5    resolve what's before me.  And if you -- for Rule 11

6    purposes -- can't bring that claim right now and it

7    doesn't look like there's a reasonable period of time

8    within which you can bring that claim, then I might as

9    well get to this kind of garden variety contract issue,

10   shouldn't I?

11              MR. DAVIS:  Your Honor, I agree.  But I would

12   add, however, just simply that we will be conducting an

13   audit as we're entitled to do under the contract.  That

14   may give us grounds independent as well because we're

15   entitled to look at the program development documents

16   with respect to the audit.  So we'll be commencing that

17   in the near future.  And we expect Abbott to comply

18   with its obligations under the agreement.  If what I

19   understand Your Honor to be saying is what you have in

20   front of you is what you intend to resolve now, I'm

21   not saying that --

22              THE COURT:  Well, after listening to all of

23   this, you can file another lawsuit.

24              MR. DAIVS:  But will Your Honor -- if I

25   understand Your Honor correctly, that if we do in the

1    meantime hit upon information that leads us to believe

2    that we have these other claims, you're not precluding

3    us from seeking to amend?

4              THE COURT:  Maybe.  It depends on how fast

5    this goes.  I mean, I don't -- now I'm back to this

6    question on what I'll call the core dispute.  What's to

7    discover?

8              MR. DAVIS:  In part, Your Honor, what they

9    intend to spend on what, over what period of time,

10   because they -- again, Abbott has taken the position

11   that they will meet the targets that are set forth in

12   the agreement.  We believe that not to be correct.  And

13   if they don't meet those targets, then our obligation to

14   pay is terminated.

15             THE COURT:  Well, why -- I mean, I listen to

16   this now as a declaratory judgment action which is

17   obviously an equitable action.  And it's not available

18   for people who want to speculate about what the other

19   side is going to do.  Have they failed to meet their

20   obligations from your perspective right now?

21             MR. DAVIS:  Your Honor, we believe that they

22   have.  But they deny that.

23             THE COURT:  Well, but maybe I'm living in a

24   fool's paradise about this.  So, the standards require

25   them to spend "X" dollars, right?

1           MR. DAVIS:  Or to plan to spend, Your Honor.

2      It's not just what they spend to a certain point in

3      time.  What the agreement provides is they have to tell

4      us what they intend to spend in the future.  And that's

5      where they have fallen short and that's what they deny.

6      Because they say that they are, in fact, going to hit

7      the aggregate spending target which is defined in the

8      agreement as 16 hundred and 14 million dollars.  We

9      don't think that that's the case.  And, so, there will

10     need to be discovery on what Abbott, in fact, intends to

11     spend, what they have planned to spend, and what they

12     plan to spend it on because the agreement also provides

13     what are permissible spending -- what they are permitted

14     to spend the money on.  So, there's a dispute --

15          THE COURT:  Why isn't this just an

16     anticipatory breach problem?  You know, you're unsettled

17     about their likelihood of spending the money according

18     to the --

19          MR. DAVIS:  Well, I'm unsettled, Your Honor,

20     by the fact that they deny it.  I mean, we have

21     quantitated the fact it wasn't.  It wasn't in dispute.

22     But Abbott has turned around and said no.  In fact,

23     contrary to the information that they provided to us in

24     the past, they do, in fact, intend to spend.

25          THE COURT:  Okay.

1          MR. DAVIS:  So, I understand Your Honor's

2     concern about trying to resolve this as a contractual

3     matter.

4          THE COURT:  So, what am I being asked to do,

5     to decide whether or not they are lying to you now?

6          MR. DAVIS:  I guess, Your Honor, what we have

7     to resolve as a factual matter is what they actually

8     intend to spend, what they planned on spending on these

9     compounds over the term of the agreement.  And, again,

10    I'd be happy to stake out our position on that point.

11    We have -- Abbott disputes it, so I don't know how we

12    resolve it other than conducting some discovery and

13    then presenting the disputed facts to Your Honor for

14    resolution.

15         THE COURT:  As I understand it, this is a

16    lawsuit that was brought because you were concerned they

17    were going to bring a lawsuit in the wrong jurisdiction.

18    It raises matters of real speculation because there has

19    not yet been a breach and there is a statement by Abbott

20    that they're going to make it.  Now, Abbott's statement

21    may give rise to forms of misrepresentation claims, 93A

22    claims, a whole series of other kinds of claims.  But it

23    hasn't done it yet.

24         MR. DAVIS:  Your Honor, we have discussed this

25    at length with Abbott and a real dispute exists.  We

1   have documentation from Abbott that, taken on its face,

2   means we don't have to pay.  When we brought that to

3   Abbott's attention, Abbott then turned around and said,

4   "No, you're wrong, you do need to pay."  And, again,

5   they threatened us with litigation to force us to make

6   the next program payment.  So, this was not speculative.

7   We had Abbott telling us that they were going to sue us.

8   And when we said "where will you sue us" because there's

9   exclusive jurisdiction in Mass., they said "we're not

10  telling you."  So, based on that, that's why we filed

11  a DJ action.  And really, Your Honor, I'm not trying to

12  be difficult.  That's what we understand to be the

13  position, relative positions of the parties.  We have a

14  dispute over whether, in fact, we have the obligation to

15  make this program payment.  We've talked with them at

16  length in an attempt to resolve the dispute.  It's

17  apparent that the parties are at logger heads.  They

18  have different interpretations of the agreement to date.

19  They dispute that what they told us before is accurate.

20  We have to resolve that dispute.

21              THE COURT:  And that seems to me to be all

22  papered.  That's the document, review of the document,

23  isn't it?  I don't know why, you know, this kind of --

24  there's obviously a breakdown in relationship.  But for

25  juridical purposes, I don't know what it is that you're

1    really asking except to use this as a vehicle for some

2    more discovery and to augment your audit rights.

3              MR. DAVIS:  No, Your Honor.  We could have

4    exercised the audit rights independent of a lawsuit.

5              THE COURT:  So, why haven't you?  This was

6    filed on December 12th.  Why haven't you done it by now?

7              MR. DAVIS:  Because, Your Honor, we have to

8    line up the auditors necessary to do that.

9              THE COURT:  No problem with lining up the

10   Court.  You could just drop something into the Court and

11   expect to have a resolution at some point.  You can

12   spend the Court's time while you guys figure out exactly

13   what you want to do.

14             Let me tell you:  Declaratory judgment is

15   available, but it's discretionary.  And what I'm

16   listening to now strikes me as suggesting that it may be

17   improvident until you've got some real dispute that has

18   been crystallized here, not back and forth, but real

19   dispute.

20             MR. DAVIS:  Your Honor, I point out that

21   Abbott, I believe in its answer, acknowledged the

22   existence of a dispute.  They don't deny that.

23             THE COURT:  What is the dispute from Abbott's

24   point of view?

25             MR. DESIDERI:  Your Honor, could I clarify

1    this?

2              THE COURT:  Sure.

3              MR. DESIDERI:  Payments that were scheduled to

4    be due under the contract were as follows.  Hancock was

5    scheduled to make the payment this last December, a very

6    large payment to Abbott.  Things were going very well

7    under this contract.  There were no problems between the

8    party whatsoever.  Sometime in October, Abbott received

9    out of the blue a letter from Hancock saying, "guess

10   what, we don't owe you any more money."  The December

11   payment date came and went.  So, Abbott has counter-

12   claimed for breach of contract for Hancock's failure to

13   pay the first payment.  We have sought a declaratory

14   judgment on the second payment because the issues are

15   very similar.  Now, the second payment is not due until

16   the end of this year.

17             THE COURT:  And is the reason for non-payment,

18   as you understand it, that they do not anticipate you're

19   going to pay the money -- put in the money that provides

20   the benchmark or whatever you --

21             MR. DESIDERI:  Absolutely.  That's what the

22   letter says, "that your failure to comply" -- I think

23   Your Honor is correct that the issue here in this case

24   as is set forth in the claims is whether Abbott is going

25   to spend the minimums it is required to spend under the

 1    contract during the time frames contemplated by the

 2    contract.  And there is no overarching or broad

 3    discovery required to resolve it.

 4              THE COURT:  What's needed to resolve that

 5    issue?

 6              MR. DESIDERI:  I think that ultimately, Your

 7    Honor, we may end up -- I think we do have the issue of

 8    contract interpretation on which I think we would like

 9    discovery of the drafts of the contact and the internal

10    -- the internal interpretations given by Hancock to the

11    contract and the other discovery that we thought would

12    be necessary.

13              THE COURT:  You mean it's not a clear

14    contract?

15              MR. DESIDERI:  Well, the parties certainly

16    dispute one provision.

17              THE COURT:  That doesn't make it ambiguous,

18    that there's a dispute.

19              MR. DESIDERI:  Not necessarily.  I agree with

20    Your Honor.  That does not make it.

21              The other thing I think that we would seek in

22    limited discovery is the course of dealing among the

23    parties.  In other words, how did each party interpret

24    it as they went along?  And we think that discovery

25    could be useful to us in discerning that Hancock

```
1     interpreted the contract as we did and it wasn't until
2     late in October when they decided they didn't want to
3     pay us for some reason, that all of a sudden we weren't
4     going to meet all the amendments.
5              THE COURT:  So, how long do you anticipate
6     your discovery?
7              MR. DESIDERI:  Four months.
8              THE COURT:  Can you do your contract discovery
9     -- that basic discovery -- in the same time period?
10             MR. DAVIS:  In the four-month period -- the
11     contract discovery?
12             THE COURT:  Yes.
13             MR. DAVIS:  Yes, Your Honor.  I can be in a
14     position to tell Your Honor whether we have other
15     dipsutes within that four-month period.
16             THE COURT:  Well, I'll be interested to hear
17     because that's a related case.  But it's likely to be a
18     different case than this one.
19             MR. DAVIS:  Your Honor, may I make one other
20     point?
21             THE COURT:  Sure.
22             MR. DAVIS:  I just want to point out it's not
23     anticipatory in the sense that Abbott has an obligation
24     each year to tell us what they anticipate spending.  So,
25     each year they have that obligation.
```

```
 1              THE COURT:  When do they have to do that?
 2              MR. DAVIS:  When?  They have to do it 45 days
 3    before the end of the year in an annual spending claim
 4    that they're supposed to submit, Your Honor.
 5              THE COURT:  And did they submit one to you?
 6              MR. DAVIS:  Your Honor, they did submit an
 7    annual spending plan for 2003, but they're supposed to
 8    give it to us before the end of 2002.  We didn't get the
 9    final spending plan until September of 2003 and that is
10    what triggered Hancock's realization that they weren't
11    going to meet the --
12              THE COURT:  Is this a calendar year?
13              MR. DAVIS:  It's on a calendar year.  The
14    program year is on a calendar year.
15              THE COURT:  So, you waited nine months before
16    you raised their failure to give you 45 days in advance
17    of the end of the calendar year?
18              MR. DAVIS:  No, Your Honor.  Hancock had
19    requested the plans earlier.  They just hadn't received
20    them from Abbott.
21              THE COURT:  Well, you requested them, but
22    waited until nine months.
23              MR. DAVIS:  We reminded them of the fact that
24    we wanted them and they sent them along in September.
25              THE COURT:  Okay.  So, are they in breach of
```

1    the 2004 one now?  Is that it?

2           MR. DAVIS:  Again, Your Honor, I wouldn't use

3    the term "breach" because it's our -- our declaratory

4    judgment is simply seeking to apply the contract as we

5    understand it's supposed to work, which is that once

6    they tell us that they're not going to spend, once they

7    form that intention, then our obligation to make further

8    payments terminates automatically.  That's the

9    declaratory judgment that we're seeking, is that they've

10   made that determination; therefore, our further

11   obligations are terminated.  So, I wouldn't regard that

12   as a breach.  We didn't accuse them of breach.  We

13   just want an interpretation.  They disagree with that

14   interpretation of the agreement.  And that's the

15   dispute.  And that is the dispute that existed that we

16   had a good faith agreement on.

17          THE COURT:  Does the contract actually require

18   that they make this disclosure 45 days before the end --

19          MR. DAVIS:  Yes, Your Honor.

20          THE COURT:  And they haven't made it?

21          MR. DAVIS:  They made it for 2003 in the fall

22   of 2003.  They provided what they regarded as a

23   preliminary spending plan in 2002.  When we got the

24   final one in September of 2003, it showed that they fell

25   below the spending target.  And they announced --

22

1                    THE COURT:  Do you dispute that --

2                    MR. DAVIS:  Yes.

3                    MR. DESIDERI:  I don't believe it showed that

4        we fell behind in the --

5                    THE COURT:  Okay.  Well, so four months of

6        discovery on this.  At some point, the parties will

7        figure out exactly what they really want to dispute here

8        and what's really in dispute on it.  We're not going to

9        get into the pharmaceutical compounds or anything like

10       that.  This really is focused on the question -- I want

11       to use the terms that the parties seem to be using -- of

12       whether or not termination of Hancock's obligation as a

13       result of shortfalls in aggregate spending targets is

14       well-founded.  I mean, isn't that what it is?

15                   MR. DAVIS:  Your Honor -- yes, Your Honor.  As

16       currently pled, it is.  So I'm clear, Your Honor, as I

17       understand it, if we believe that we have other

18       disputes, should I seek to amend or should I file a

19       separate action?

20                   THE COURT:  I guess my --

21                   MR. DAVIS:  Because I want to make sure I'm

22       not precluded, Your Honor, from bringing those claims at

23       a later point in time by some argument by Abbott that

24       they should have been brought in this action and were

25       not.

1               THE COURT:  Oh, please.  The short of it is --
2     are you going to plead that?
3               MR. DESIDERI:  Am I going to say that?
4               THE COURT:  Yes.
5               MR. DESIDERI:  I didn't plan on it.
6               THE COURT:  Well, he's not going to say that.
7     It's simply not going to happen.
8               MR. DAVIS:  Understood.
9               THE COURT:  Once it's ripe, you bring it.  You
10    don't have to worry about relation-back and all of that
11    sort of thing.
12              MR. DAVIS:  Understood.
13              THE COURT:  But you file a lawsuit.  You try
14    to get it in some sort of reasonable order promptly.
15    And if you've got other disputes, maybe you'll bring
16    another lawsuit.  But I don't see it happening within
17    the four months if you haven't even asked for your audit
18    rights yet after commencing the dispute in December of
19    last year, the dispute here.
20              So, four months to complete discovery, which
21    is July 30th.  I don't think there are experts involved
22    in this contract interpretation.  I'm not even sure that
23    there's parol evidence, although you can spend time
24    trying to figure out if there is.  But I don't see any
25    experts on this issue, do you?  Do either of you?

24

1          MR. DESIDERI:  I can't think of any, Your

2     Honor.

3          MR. DAVIS:  Right now, Your Honor, we

4     wouldn't anticipate having experts on the contractual

5     interpretation issue.

6          THE COURT:  Okay.  Well, that's what this

7     essentially is, although you're getting some additional

8     discovery on the question of course of dealing and

9     background information and what their real anticipations

10    are.

11         So, then dispositive motions on that by

12    September 17th.  Is that okay?

13         MR. DAVIS:  Yes, Your Honor.

14         THE COURT:  Okay.  And I would expect them to

15    be cross motions and you both get to reply.  And that's

16    it for the pleadings.  There's no reply or anything like

17    that.  So, you both file cross motions for summary

18    judgment as to these issues.

19         And with respect to these other disputes, if

20    they crystallize, I suspect they'll be brought in

21    another lawsuit.  Now, is there anything else that we

22    need to talk about on this?

23         MR. DAVIS:  No, Your Honor.

24         MR. DESIDERI:  No, Your Honor.

25         THE COURT:  Oh, one other thing.  Everything

25

1    from now on should be done with electronic filing here.

2    So we'll anticipate that that's what you're going to be

3    doing.

4            MR. DESIDERI:  Yes, sir.

5            THE COURT:  I suspect that when it comes time

6    for the summary judgment motions, I'll want courtesy

7    copies, hard copies as well.  But you file, so that we

8    have docketed all of the papers, by electronic filing.

9    Okay?

10           MR. DAVIS:  Understood, Your Honor.

11           THE COURT:  All right.  Thank you.

12                RECESSED AT 3:00 P.M.

13

14           C E R T I F I C A T E

15           I, PAMELA R. OWENS, Official Court Reporter,

16   U. S. District Court, do hereby certify that the

17   foregoing is a true and correct transcription of the

18   proceedings taken down by me in machine shorthand and

19   transcribed by same.  I certify that the transcript fees

20   charged and the page format used by me comply with the

21   requirement of this Court's court reporter plan and the

22   requirements of the Judicial Conference of the United

23   States.

24                        *Pamela R. Owens*  4/8/04

25

## O'Brien, Raymond

| | |
|---|---|
| From: | ECFnotice@mad.uscourts.gov |
| Sent: | Tuesday, April 06, 2004 4:05 PM |
| To: | CourtCopy@mad.uscourts.gov |
| Subject: | Activity in Case 1:03-cv-12501-DPW John Hancock Life Insurance Company et al v. Abbott Laboratories "Transcript" |

***NOTE TO PUBLIC ACCESS USERS*** You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.

United States District Court
District of Massachusetts

Notice of Electronic Filing
The following transaction was received from Scalfani, Deborah entered on 4/6/2004 at 4:05 PM EDT and filed on 4/6/2004

Case Name: John Hancock Life Insurance Company et al v. Abbott Laboratories
Case Number: 1:03-cv-12501 https://ecf.mad.uscourts.gov/cgi-bin/DktRpt.pl?89731

Document Number: 12
Copy the URL address on the line below into the location bar of your Web browser to view the document: 12

Docket Text:
TRANSCRIPT of Hearing held on March 30, 2004 before Judge Woodlock. Court Reporter: Pamela R. Owens. The original transcripts are maintained in the case file in the Clerk's Office. Copies may be obtained by contacting the court reporter at 617/443-0008 or the Clerk's Office. (Scalfani, Deborah)

The following document(s) are associated with this transaction:

1:03-cv-12501 Notice will be electronically mailed to:
Michael S. D'Orsi                        msd@dcglaw.com

Brian A. Davis                            BDavis@choate.com

Peter E. Gelhaar                          peg@dcglaw.com

Gretchen A. Lundgren                      Gedson@choate.com

Raymond A O'Brien                        robrien@choate.com

Michael A. Walsh                          MWalsh@choate.com


1:03-cv-12501 Notice will not be electronically mailed to:
Lawrence R. Desideri
Winston & Strawn LLP
35 W. Wacker Drive
Chicago, IL 60601-9703