# Exhibit K

# WINSTON & STRAWN LLP

43 RUE DU RHONE
1204 GENEVA, SWITZERLAND

CITY POINT
1 ROPEMAKER STREET
LONDON, EC2Y 9HT

333 SOUTH GRAND AVENUE
LOS ANGELES, CALIFORNIA 90071-1543

35 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60601-9703

(312) 558-5600

FACSIMILE (312) 558-5700

www.winston.com

200 PARK AVENUE
NEW YORK, NEW YORK 10166-4193

21 AVENUE VICTOR HUGO
75116 PARIS, FRANCE

101 CALIFORNIA STREET
SAN FRANCISCO, CALIFORNIA 94111-5

1400 L STREET, N.W.
WASHINGTON, D.C. 20005-3502

STEPHEN V. D'AMORE
(312) 558-5934
sdamore@winston.com

July 13, 2004

BY FACSIMILE

Raymond A. O'Brien
Choate, Hall & Stewart
53 State Street
Boston, Massachusetts 02109-2804

      Re:    *John Hancock Insurance Co., et al.* ("Hancock") *v. Abbott Laboratories* ("Abbott"), C.A. No. 03-12501-DPW (D. Mass.)

Dear Ray:

      I write in response to your July 8, 2004 letter, received after the close of business on that date, and further to our July 1, 2004 meet and confer telephone conference. In addition, I write to identify various significant deficiencies that exist in the privilege log produced by Hancock on July 11, 2004.

      As a threshold matter, the scope of allowable discovery, as articulated by Judge Woodlock at the March 30, 2004 hearing, and based on the pleadings as currently framed, is very narrow and limited to what is essentially a contract interpretation issue. As Judge Woodlock put it: "This really is focused on the question . . . of whether or not termination of Hancock's obligation as a result of shortfalls in aggregate spending targets is well-founded." (3/30/2004 Tr. at 22.) I think we can agree that the "termination of Hancock's obligation" Judge Woodlock was referring to is Hancock's refusal to make the Third and Fourth Program Payments pursuant to Article 3 of the Research Funding Agreement (the "Agreement"), not any payments or corresponding reports for prior years. Additionally, Judge Woodlock also expressly commented that the litigation was "not a vehicle for providing generalized discovery into the parties' relationship." (*Id.* at 9.) The Court's direction on these points, as well as the limited nature of the dispute as set forth in the pleadings, has guided Abbott's responses to Hancock's discovery requests. We believe, however, that the areas of purported deficiencies in Abbott's responses identified by Hancock are demands for information that fall far outside the narrow scope of discovery articulated by the Court and warranted by the issues defined in the pleadings.

**WINSTON & STRAWN** LLP

Raymond A. O'Brien
July 13, 2004
Page 2

A. **Document Requests**

*Manner of Production.* I can confirm that Abbott has produced documents in the manner that they are kept in the usual course of business, that duplicates have been produced, and that Abbott has not withheld from production any documents solely on the ground that they are already in the possession of Hancock. Because General Objection 4 is not limited to such issues, it cannot be withdrawn. Please confirm immediately whether or not Hancock has produced documents as they exists in the usual course of business, duplicates, and documents regardless of whether they may already be in Abbott's possession.

*Requests 1-8, 27, 31.* As we discussed, Abbott has produced responsive, non-privileged documents relating to the parties' obligations under Article 3 of the Agreement, including documents relating to terms and conditions that, while not necessarily defined or set forth in Article 3, are nevertheless encompassed by the obligations contained in Article 3 and are relevant to the case. Thus, as a non-exhaustive example, Abbott has agreed to produce and has produced documents concerning Abbott's interpretation and the negotiation of the initial "Program Term," even though that term initially is defined in a section other than Article 3.

In response to Requests 1-8, Abbott agreed to produce, and in fact has produced, all non-privileged documents within its possession, custody, or control relating to the negotiation and drafting of the Agreement, the interpretation or construction of the parties' obligations under Article 3 of the Agreement (as well as the other, relevant contract terms and conditions encompassed by Article 3, as defined above), and communications relating to the 2003 and 2004 Annual Research Plans. Abbott's production, thus, squarely meets the limited scope of discovery articulated by the Court at the March 30 hearing and is tailored to the narrow dispute set forth in the pleadings.

Your July 8 letter proposes, as a manner of purportedly narrowing various of Requests 1-8, that Abbott agree to produce (or, I assume, acknowledge that its production to date includes) "all documents concerning the Research Funding Agreement that are relevant to any claim, defense, subject matter, or topic or issue germane to the present litigation," and then identifies certain categories of documents included within that broad definition. While we do not believe this broad definition is helpful or provides any concrete basis for narrowing the discovery dispute, I can confirm that Abbott has produced, in response to these and other requests, all responsive documents that fall within certain specific categories identified in your letter or which we otherwise believe are relevant to the litigation. Specifically, Abbott has produced all non-privileged documents concerning:

- the interpretation or construction of the parties' obligations under the relevant provisions of the Agreement (as set forth above);

- Hancock's allegation in its Complaint that it is entitled to terminate its payment obligations under Article 3 of the Agreement, and specifically to withhold the Third and Fourth Program Payments under the Agreement, because Abbott did

**WINSTON & STRAWN** LLP

Raymond A. O'Brien
July 13, 2004
Page 3

> not reasonably demonstrate in its 2003 Annual Research Plan its intention to meet the Aggregate Spending Target within four years, or by December 31, 2004;
>
> - Abbott's allegation in its Counterclaim that Hancock has breached the Agreement by failing to make the Third Program Payment due on December 1, 2003 and its contention that Hancock is not relieved from making the Fourth Program Payment due on December 1, 2004; and
>
> - Abbott's two affirmative defenses, based on waiver and estoppel.

I can also confirm that Abbott has produced all:

> - non-privileged drafts, revisions, and documents used or relied upon to produce the 2003 Preliminary Annual Research Plan and 2003 final Plan;
>
> - non-privileged documents sufficient to show Abbott's intent and reasonable expectations regarding spending under the Agreement for the 2003 Program Year through December 31, 2005; and
>
> - any additional non-privileged documents, identified in Abbott's initial disclosures, that Abbott presently intends to use to support its claims or defenses.

With this said, to the extent Hancock is seeking additional documents in its requests, as limited by your July 8 letter, Abbott will stand on its objections to producing any additional information in response to Requests 1-8, 27 and 31.

*Requests 9-12, 15-20.* Abbott will stand on its original responses and objections to Requests 9-12, which generally seek all documents "concerning" the 2001, 2002, and 2003 annual research plans, and Requests 15-20, concerning Abbott's intended spending on Program Related Costs during the initial four-year Program Term. These requests are inappropriate for various reasons we have discussed already, including principally the following:

> - There is no dispute in this case, as articulated by Judge Woodlock and as set forth in the pleadings, relating to any submission made by Abbott prior to the 2003 Preliminary Annual Research Plan, sent to Hancock on December 20, 2002. Hancock's Complaint and Abbott's Counterclaim make no claims relating to the 2001 and 2002 plans or corresponding payment from Hancock, and neither of Abbott's two affirmative defenses is based on the content of the 2001 and 2002 plans. As such, the discovery sought by Hancock concerning the 2001 and 2002 plans is not relevant to any claim or defense asserted by either party in the case. Moreover, Abbott has produced all documents on which it presently intends to rely (in addition to documents produced by Hancock) to support its claims and defenses in the litigation.

WINSTON & STRAWN LLP

Raymond A. O'Brien
July 13, 2004
Page 4

- There also is no dispute in the case as to Abbott's intentions with respect to meeting the Aggregate Spending Target during the initial four-year Program Term, and thus no justification for Hancock's various demands for documents (in addition to drafts and documents used to produce the 2003 plan submissions) relating to Abbott's intention to meet the Aggregate Spending Target *by December 31, 2004*. On this point, I would direct your attention to Abbott's response to Hancock's Request for Admission 13, wherein Abbott admitted that its 2003 Final Annual Research Plan did not demonstrate Abbott's intent and reasonable expectation to meet the Aggregate Spending Target by December 31, 2004. Likewise, in response to Hancock's Request for Admission 14, Abbott admitted that its 2003 Final Annual Research Plan estimated that Abbott would spend an amount less than the Aggregate Spending Target during the initial four-year Program Term. There is no legitimate basis for Hancock to demand discovery on issues that Abbott has expressly conceded.

Finally, I can confirm that the analyst expenditure forecasts for the relevant plan years referenced in Abbott's response to Hancock's Interrogatory 5, and identified as an area of purported deficiency on page 5 of your July 8 letter, have in fact been produced. These forecasts, also referred to as "development cost summaries" or Plan Executive Program Summaries, were provided to Hancock as part of the annual reports, and can be found in numerous places within Abbott's production. If you would like, I can provide some example Bates numbers of these forecasts within Abbott's production. Additionally, Abbott produced documents related to and which were used to prepare these forecasts.

B. Interrogatories

My understanding is that we agreed to consider whether, apart from those individuals who we are scheduled to depose, the parties will require fuller descriptions of the roles played by certain individuals identified in response to various interrogatories. Abbott is considering your request with respect to the individuals identified in Interrogatories 5, 8, and 9 other than those who are presently scheduled for deposition, although general descriptions were provided in the interrogatory responses immediately before the listing of these individuals. With respect to Interrogatories 3 and 4, my understanding from our conference was that Hancock wanted confirmation that all individuals identified in response to Interrogatory 3 also should be identified in response to Interrogatory 4. I can now confirm that this is indeed the case. Abbott will consider your modified Interrogatory with respect to the 2003 Annual Research Plans, but stands on its objections with respect to the prior plans. I would note, however, that you already have Abbott's answer with respect to the 2003 Annual Research Plans in Abbott's response to the materially identical Requests for Admissions 7 and 10.

C. First Request for Admissions

Your understanding concerning Requests 2 and 5 is correct—Abbott will stand on its objections with respect to these requests dealing with the 2001 and 2002 Annual Research

**WINSTON & STRAWN LLP**

Raymond A. O'Brien
July 13, 2004
Page 5

Plans, which are not in any way at issue in the litigation. Further, we have reviewed Abbott's response to Request 15 in light of the September 22, 2003 letter from Thomas Lyons to Stephen Blewitt that you identified in prior correspondence and during our July 1 teleconference. Having done so, we believe Abbott's response to this request was and remains appropriate, and that no revision of the response is, therefore, necessary.

### D. Additional Information From John Hancock

Please let me know as soon as possible whether Hancock will provide supplemental answers to Abbott's Interrogatories 6 and 7, as we discussed during our July 1 conference. Also, please let me know immediately whether Hancock intends to withdraw its Fourth Affirmative Defense (that Abbott's claim is barred by Abbott's alleged violations of the Research Funding Agreement) or whether, alternatively, Hancock will provide an immediate answer to Abbott's Interrogatory 9 seeking the basis for this affirmative defense.

### E. Responses to Hancock's Second Set of Interrogatories and Requests for Admissions

You indicate that each of Abbott's answers to Hancock's second set of interrogatories and second request for admissions is "non-responsive," but do not say in what manner Abbott's answers are non-responsive. Please identify immediately Hancock's basis for claiming that Abbott's answers are non-responsive, as well as the date and time on which you would like to conduct a meet and confer telephone conference.

### F. Deficiencies in Hancock's Privilege Log

We have reviewed the privilege log provided by Hancock on July 11 and believe the log contains numerous, significant deficiencies. First, in numerous instances—too many to identify individually in a letter—Hancock's descriptions of the subject matter of allegedly privileged material are insufficient to provide a basis for assertion of privilege. Fed. R. Civ. P. 26(b)(5) requires privilege assertions to be supported by a description sufficient to allow other parties to assess the applicability of the privilege or protection being asserted. Many, if not most, of Hancock's subject matter descriptions fall far short of this standard. In numerous instances Hancock has provided merely one or two-word descriptions of documents. Examples include: "Draft RFA" (page 1); "Accounting information" (page 4); "Elitra" (page 5); "RFA" (page 6); "Draft letter" (page 8); "Daphne Pals" (page 9); "Patents" (page 14); "Abbott" (page 19); "Research Program" (page 19); "Draft report" (page 22); "Proposed letter" (page 24); "Draft letter" (page 44); "December funding" (page 49); "Abbott meeting" (page 51). The various references in the log to "Draft RFA" for documents dated in late 2002 and early 2003 are particularly curious, given that the Agreement was executed as of March 13, 2001. (*See, e.g.,* JH PRIV_02711-02713, 00149-00153, 00174-00177.)

With respect to materials over which Hancock asserts "WP" or work product protection, none of the descriptions are sufficient to invoke the elements of work product

**WINSTON & STRAWN LLP**

Raymond A. O'Brien
July 13, 2004
Page 6

protection, including the requirement that the material be prepared in anticipation of litigation—particularly as to the numerous documents on the log dated prior to the September 22, 2003 letter from Thomas Lyons, which Hancock alleges to be the basis for its termination of payments under the Research Funding Agreement. We request that Hancock immediately produce a revised privilege log that provides descriptions sufficient for Abbott to assess the applicability of the privilege or protection asserted, as required by Fed. R. Civ. P. 26(b)(5).

Additionally, there are a substantial number of unexplained gaps in the Bates numbering of the items on the log (*See* attached appendix), and there is no document numbered JH PRIV 00389 on the log, which the log indicates is a duplicate of JH PRIV 00390. Please explain these omissions as soon as possible.

Finally, in the last paragraph of your letter, you indicate that it is Hancock's intention to raise any unresolved discovery issues with the Court "within the next several business days." We do not believe that Hancock has a legitimate basis to file motions to compel further discovery, particularly in light of the limited scope of discovery articulated by Judge Woodlock at the March 30 hearing and as warranted by the pleadings. It is Abbott's position that any such motion practice, given the current record, would be a delay tactic, given that Hancock has been in possession of Abbott's written discovery responses for almost two months now, since May 17, 2004. We expect that, regardless of whether Hancock moves to compel, the currently scheduled depositions will proceed as scheduled and that Hancock will not request that the discovery schedule be extended because of any motions to compel.

Sincerely,

Stephen V. D'Amore

SVD:ll

cc: L. Desideri
P. Gelhaar
M. D'Orsi

## Appendix

## Gaps In Hancock Privilege Log

| Bates Range | Log Pg. | Gap |
|---|---|---|
| JH PRIV 00076-00083   JH PRIV 00085-00089 | 2 | JH PRIV 00084 |
| JH PRIV 00085-00089   JH PRIV 00091-00096 | 2 | JH PRIV 00090 |
| JH PRIV 00146-00147   JH PRIV 00149-00153 | 3 | JH PRIV 00148 |
| JH PRIV 00320-00322   JH PRIV 00325-00326 | 6 | JH PRIV 00323-00324 |
| JH PRIV 00496   JH PRIV 00498 | 10 | JH PRIV 00497 |
| JH PRIV 00502-00503   JH PRIV 00505 | 11 | JH PRIV 00504 |
| JH PRIV 00521   JH PRIV 00523-00524 | 12 | JH PRIV 00522 |
| JH PRIV 00877   JH PRIV 00833 | 19 | JH PRIV 00878-00832 |
| JH PRIV 00903   JH PRIV 00905-00906 | 21 | JH PRIV 00904 |
| JH PRIV 01104-01106   JH PRIV 01108-01172 | 26 | JH PRIV 01107 |
| JH PRIV 01429-01430   JH PRIV 01432-01434 | 28 | JH PRIV 01431 |
| JH PRIV 01482   JH PRIV 01484-01485 | 29 | JH PRIV 01483 |
| JH PRIV 01495-01496   JH PRIV 01498-01499 | 29 | JH PRIV 01497 |
| JH PRIV 01500-01504   JH PRIV 01507-01544 | 29 | JH PRIV 01505-01506 |
| JH PRIV 01890   JH PRIV 01892-01894 | 34 | JH PRIV 01891 |
| JH PRIV 01900-01902   JH PRIV 01905-01906 | 35 | JH PRIV 01903-01904 |
| JH PRIV 01907-01909   JH PRIV 01922-01925 | 35 | JH PRIV 01910-01921 |
| JH PRIV 02384   JH PRIV 02388-02390 | 41 | JH PRIV 02385-02387 |
| JH PRIV 02398   JH PRIV 02400 | 42 | JH PRIV 02399 |
| JH PRIV 02540-02543   JH PRIV 02545 | 46 | JH PRIV 02544 |
| JH PRIV 02715   JH PRIV 02717-02718 | 48 | JH PRIV 02716 |
| JH PRIV 02817   JH PRIV 02823-02830 | 51 | JH PRIV 02818-02822 |
| JH PRIV 02858   JH PRIV 02860 | 54 | JH PRIV 02859 |
| JH PRIV 02860   JH PRIV 02862-02864 | 54 | JH PRIV 02861 |
| JH PRIV 02869-02873   JH PRIV 02879 | 54-55 | JH PRIV 02874-02878 |
| JH PRIV 02881   JH PRIV 02883-02888 | 55 | JH PRIV 02882 |
| JH PRIV 02951   JH PRIV 02958-02963 | 56 | JH PRIV 02952-02957 |
| JH PRIV 03079   JH PRIV 03081 | 58-59 | JH PRIV 03080 |
| JH PRIV 03096   JH PRIV 03098 | 59 | JH PRIV 03097 |
| JH PRIV 03101   JH PRIV 03103 | 60 | JH PRIV 03102 |
| JH PRIV 03103   JH PRIV 030105 | 60 | JH PRIV 03104 |
| JH PRIV 03208   JH PRIV 03214-03290 | 61 | JH PRIV 03209-03213 |
| JH PRIV 03290   JH PRIV 03292 | 62 | JH PRIV 03291 |

CHI:1394969.1